UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GLENN MYERS | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| VS. | : | NO. |
| | : | |
| DIANON SYSTEMS, INC., | : | |
| DIVISION OF LAB CORP OF | : | |
| AMERICA, | : | |
| | : | |
| DEFENDANTS. | : | MARCH 17, 2014 |

# C O M P L A I N T

## COUNT ONE

1. This is an action for money damages to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States and the State of Connecticut. The defendant subjected the plaintiff to, inter alia, violation of the rights secured to the plaintiff by the provisions of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A.§§ 621, et seq.; the Connecticut Fair Employment Practices Act, Sections 46a-58(a) et seq. of the Connecticut General Statutes; and to the intentional infliction of emotional distress, in contravention of the laws of the United States and the laws of the State of Connecticut.

2. Jurisdiction of this Court is invoked under the provisions of Sections 1331, 1337, 1343, 1343(3) and/or 1367(a) of Title 28 of the United States Code, and the court's supplemental jurisdiction over state law claims.

3. At all times relevant to the instant complaint, the plaintiff, Glenn Myers, is an adult citizen of the United States residing in Stratford, Connecticut.  The plaintiff is male, and was born on June 1, 1959.

4. At all times relevant to the instant complaint, the defendant Dianon Systems, Inc., Division of Lab Corp of America was and is an employer with more than 100 employees.  The defendant is located in Stratford, Connecticut.

5. For an extended period of time continuing to the date of his termination, the plaintiff has been subjected to an ongoing pattern of harassment, discrimination, retaliation and disparate treatment based upon his age, gender or complaints about discrimination.

6. Throughout his employment with the defendant as detailed herein and continuing to the date of his termination, the plaintiff was subjected to an ongoing pattern of discrimination, harassment, retaliation and disparate treatment.  The conduct was continuous, persistent and ongoing.

7. At all times relevant to the instant complaint, the plaintiff was employed by the defendant as a Supervisor 1.  The plaintiff was employed by the defendant since March 20, 1989.

8. The plaintiff began his employment with the defendant in its collections department. The plaintiff then transferred to the accounting department in 1989, and worked doing accounts payables and accounting reports for senior management.

9. In 1991, the plaintiff began working in the laboratory. The plaintiff worked opening and processing medical specimens and data entered these specimens with patient demographics and insurance information. The plaintiff processed blood samples and data entered them. His work was always excellent.

10. As a result of his excellent work, the plaintiff applied for and was promoted to a position in the urine cytology department. Here, the plaintiff got even more involved with processing specimens. The plaintiff enjoyed his work and thrived in this department. As a result, the plaintiff was promoted from lab aide to senior technologist in this department in 1996.

11. The excellence of his work and the growth of the department allowed defendant to take on more employees and in 2001 the plaintiff was again promoted. The plaintiff was made supervisor of the cytology wet lab, and placed in charge of a crew of as many as ten people.

12. The plaintiff was responsible for managing the crew to make sure they were trained and reviewed properly on how to process urine specimens along with fine needle aspirates and other cytologies.

13. This was the position the plaintiff held until the plaintiff was terminated on February 10, 2012.

14. The plaintiff was always a stickler on patient care, making sure that the specimens were processed correctly and accurately as to yield the best results. The plaintiff never had a bad review in his entire career at Dianon and was always praised and highly regarded

15. In 2010, the defendant hired Thomas Schofield as its general manager. Schofield is substantially younger than the plaintiff.

16. From the outset, Schofield's attitude toward and treatment of the planitiff was dismissive.  It became apparent that Schofield thought less of the plaintiff because he perceived the plaintiff to be older, and therefore less capable.  Schofield subjected other older employees, including the plaintiff to discrimination based upon age and hostile work environment.

17. Although Schofield told the plaintiff that he was going to promote him to the position of clinical lab supervisor, he did not intend to, nor did he promote the plaintiff. Instead, Schofield promoted another employee to the position whom, upon information and belief, is younger than the plaintiff.

18. As it turned out, the other employee was terminated, as he could not do the job.

19. In 2011, Schofield became furious at the plaintiff for asking for assistance in an employment duty for which the plaintiff never received training.  He threw a fit because the plaintiff didn't know how to do this particular task. He said only that the plaintiff should have known how to do this. This issue was brought up by Schofield in a management meeting with other supervisors, where he stated that the plaintiff should have known how to do this task, despite his not having received training on it.

20. In October of 2011, the defendant falsely claimed that an employee the plaintiff supervised was not adhering to a set schedule like other employees, and claimed that she was engaging in other behavior such as texting and accessing the internet.  The employee was plaintiff's team leader.

21. The plaintiff's supervisor, Cynthia Milano, told the plaintiff that Laura LaCascia, defendant's Human Resources manager, ordered Ms. Milano and the plaintiff to speak to the employee concerning this issue.

22. Milano is female.

23. The plaintiff did as ordered by the defendant.  MIlano and the plaintiff spoke to the employee.

24. Schofield thereafter called Milano and the plaintiff up to his office.  He was annoyed at the plaintiff about this employee.

25. On February 8, 2012, LaCascia called Milano and the plaintiff up to her office, again about the same employee.

26. Although the plaintiff had done all that the plaintiff was supposed to do as a supervisor, the defendant falsely claimed that the plaintiff had not, and claimed that his subordinates had "no confidence" coming to the plaintiff to complain about the team lead.

27. At this time, the defendant, through LaCascia, threatened Milano and the plaintiff with termination if they discussed this issue with other employees.

28. Thereafter, the team lead was sent home and LaCascia stated that she would meet with both plaintiff's female supervisor, Milano, and the plaintiff the next day.

29. The next day, February 10, 2012, LaCascia requested that only the female Milano meet with her and Schofield.

30. On that day at 4 p.m., the plaintiff received an email from LaCascia ordering him to meet with her and Schofield at 4:30 p.m. that same afternoon.

31. At this meeting, the plaintiff was terminated by Schofield and LaCascia. They said that the plaintiff was terminated because the plaintiff showed "favoritism" towards the employee. This is patently false.

32. In its written reason for his termination, the defendant stated that the plaintiff was terminated for "performance". This is false and purely pretextual, as his reviews have always been superb, and the defendant rated him as "great" and "outstanding".

33. Before his abrupt termination, the plaintiff had never received any written or verbal warnings, or discipline of any sort.

34. The terminated employee did approximately 75% of her work directly for the plaintiff's supervisor, the female Milano.  The defendant's dry lab was separated from the wet lab. When the terminated employee was in the dry lab, she was wasn't in his direct proximity.

35. Despite having supervisory responsibility over the terminated employee and over the plaintiff, the female Milano was not terminated, yet the plaintiff was.

36. In another instance where the defendant treated a female employee preferentially over a male employee, a female manager who allowed her employees to come in when they pleased and to not adhere to a schedule was not disciplined.  This is exactly what the defendant alleges the plaintiff did regarding the terminated employee, for which the plaintiff was terminated.

37. The same female manager freely discussed these events, going so far as to use Facebook to do so.  On the other hand, LaCascia ordered the plaintiff not to talk about the issues, stating that the plaintiff would be fired if he did so.

38. The plaintiff has always had a first rate work ethic and never called in sick. He went to work regardless of weather and made sure all of his work was completed to the best of his ability. The plaintiff always made patient care his top priority and cared passionately about his work.

39. For an extended period of time continuing to the date of his termination, the plaintiff has been subjected to an ongoing pattern of harassment, discrimination and disparate treatment based upon his age, his gender and opposition to and complaints about the hostile and discriminatory environment at the defendant.

40. The conduct the plaintiff was subjected to was continuous, persistent, pervasive and constitutes a continuing course of conduct, as that term is defined in the law.

41. The defendant has created, fosters and maintains a culture and environment of harassment, discrimination and retaliation based upon protected classes, particularly, age, gender and retaliation.

42. The defendant disparately and selectively set out to, and did terminate or force to quit employees based upon their age.

43. The plaintiff has been harassed, discriminated against, subjected to a hostile work environment, treated differently from other similarly situated employees by the defendant, disciplined, threatened and terminated in part because of one or more of the following: his age, his gender and his complaints about his treatment and the defendant's hostile work environment.

44. The reasons for termination which the defendant threatened to use were false or pretextual.

45. The plaintiff was harassed and then terminated due to his age, gender and complaints about defendant's unlawful conduct.

46. The plaintiff has exhausted his administrative remedies in this matter, and has sought and received a Notice of Right To Sue letter from the United States Equal Employment Opportunity Commission, and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities.

47. As a consequence of the actions of the defendant, the plaintiff has suffered loss of employment, loss of pay, loss of benefits, severe emotional distress and harm, anxiety, upset, fear, humiliation, indignity, stress, deprivation of rights, harm to his professional and personal reputation and severe financial harm.

48. In the manner described above, the actions of the defendant constitute violation of the rights secured to the plaintiff by the provisions of the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

**COUNT TWO**

1.-47. Paragraphs 1 -47 of Count One are hereby made Paragraphs 1-47 of Count Two.

48. In the manner described above, the actions of the defendant constitute violation of the rights secured to the plaintiff by the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A.§§ 621, et seq.

**COUNT THREE:**

1.-47. Paragraphs 1-47 of Count One are hereby made Paragraphs 1-47 of Count Three.

48. In the manner described above, the defendant has subjected the plaintiff to, inter alia, age discrimination, gender discrimination, retaliation and hostile work environment.

49. In the manner described above, the actions of the defendant constitute violations of the provisions of the Connecticut Fair Employment Practices Act, Sections 46a-58(a) et seq. of the Connecticut General Statutes, in contravention of the Constitution and laws of the State of Connecticut.

**COUNT FOUR:**

1.-47. Paragraphs 1-47 of Count One are hereby made Paragraphs 1-47 of Count Four.

48. The actions of the defendant were extreme and outrageous.

49. The actions of the defendant were intentional.

50. The actions of the defendant were likely to cause severe emotional distress.

51. The actions of the defendant caused the plaintiff to suffer extreme emotional distress.

WHEREFORE, the plaintiffs claim judgment against the defendants as follows:

   A.  Compensatory damages;

   B.  Punitive damages;

   C.  Attorney fees and the costs of this action pursuant to all applicable provisions of state and federal law;

   D.  Equitable relief pursuant to 29 U.S.C.A.§§ 626(b) and (c), 633a(b) and (c) and all other applicable provisions of state and federal law;

   E.  Such other relief as this Court shall consider to be fair and equitable.

## **CLAIM FOR JURY TRIAL**

The plaintiff claims trial by jury of all issues in this case.

THE PLAINTIFF


BY_____/s/_____
        WILLIAM S. PALMIERI
        Law Offices of William S. Palmieri, L.L.C.
        Federal Bar No. ct14361
        129 Church Street, Suite 405
        New Haven, CT 06510
        PHONE: (203) 562-3100
        FAX:  (203) 909-6006
        EMAIL:  wpalmieri@hotmail.com
        His Attorney